STATE OF NORTH CAROLINA v. CAREY LEE CLARK

No. COA96-1374

(Filed 3 March 1998)

**1. Evidence and Witnesses § 930 (NCI4th)— hearsay—present sense impression exception—closeness in time**

The trial court did not err in a prosecution for first-degree murder by allowing defendant's sister-in-law to testify about statements made about defendant by his now deceased mother, including defendant's statement that he would kill the victim. Defendant's mother made the statements after observing defendant's behavior and walking to her daughter-in-law's house next door; the statements were close enough in time to her perception of defendant's statements to be considered immediately thereafter and the present sense impression exception to the hearsay rule applies. N.C.G.S. § 8C-1, Rule 803(1).

**2. Evidence and Witnesses § 2967 (NCI4th)— murder—statements by prosecuting witnesses showing bias—excluded—error**

The trial court erred in a prosecution for first-degree murder by excluding testimony regarding statements made by two of the State's witnesses which would tend to show their bias. A defendant in North Carolina may always challenge the credibility of a prosecuting witness who testifies against him. Defendant showed a reasonable possibility of a different result if the trial court had introduced the evidence because it related to the overt and malevolent bias of witnesses on whose testimony the State largely relied to make its case.

Appeal by defendant from judgment entered 28 March 1997 by Judge Loto G. Caviness in Avery County Superior Court. Heard in the Court of Appeals 21 August 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Clarence J. DelForge, III, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

STATE v. CLARK

[128 N.C. App. 722 (1998)]

WYNN, Judge.

During Carey Lee Clark's trial for first-degree murder, the trial judge allowed Ivalee Clark to testify about statements made by Carey's deceased mother but excluded testimony from Mary Hodges that tended to show that the prosecuting witnesses were biased against him. Because the testimony of Ivalee Clark came within the meaning of the present sense impression exception to the hearsay rule, we affirm the admission of her testimony. However, because our Supreme Court held in *State v. Wilson* that a defendant is entitled to offer evidence of the bias of the prosecuting witnesses, we reverse the trial court's decision to exclude the testimony of Mary Hodges.

In 1981, someone killed Kenneth George Davis. Before Carey Clark's arrest some 15 years later, no suspect had been arrested for the murder.

The record reveals that Davis had earned his living by driving residents of rural Avery County to their jobs. On the morning of 18 June 1981, Davis did not show up on his regularly scheduled route. When Sheriff's deputies arrived at his apartment at approximately 6:30 a.m., he was found shot to death in front of his apartment doorway. An autopsy determined that he had died from multiple shotgun wounds, and evidence at the scene indicated that he was murdered while exiting his apartment.

In 1995, an anonymous tip to the Avery County Sheriff's Department lead Detective Jeff Clark to interview several witnesses, including some of Carey's relatives. That investigation lead to Carey's arrest.

At trial, the State's case included testimony by several of Carey's relatives about inculpatory acts and statements made by him. Those witnesses testified that at the time of Davis' death, Carey and his wife were having financial difficulties; Carey became upset because Davis had threatened to stop driving his wife to work because they had not paid him; the day before Davis' body was found, Carey was overheard saying that he was going to kill Davis; and he did not come home the night before the body was discovered. The witnesses further stated that on the morning that the body was found, they overheard Carey saying that he had been lying in wait for someone and had shot and killed someone; after the body was discovered, Carey made other inculpatory statements, namely that he was going to kill various other

STATE v. CLARK

[128 N.C. App. 722 (1998)]

people like he had killed Davis, and that he had destroyed the murder weapon in a stove.

Carey denied involvement with Davis' death and said that he was being set up by his sister, Patricia Allen. His evidence tended to show that he was being framed by his family; when his mother died at some time after the shooting, she left land to his sister, Patricia "Margie" Allen and his brother, Howard Clark with a condition that Carey could live on the land for as long as he behaved to the satisfaction of Patricia Allen; shortly before the anonymous tip to the Sheriff's Department, Carey had a dispute with Patricia and Howard, and Patricia had an ejectment action taken out against him.

Following conviction by a jury, the trial court sentenced Carey to life in prison. He now appeals to this Court.

I.

**[1]** Carey Lee Clark first argues that the trial court erred by allowing his sister-in-law, Ivalee, to testify about statements made by his now deceased mother, Lona Clark. Because the hearsay testimony came within the meaning of the present sense impression exception to the hearsay rule, we hold that there was no error in admitting the statements.

Ivalee testified that Lona Clark came to her home the day before Davis's body was found; Lona's face was red and she was picking her teeth, a nervous habit that she had when upset; Lona indicated she was not sick and that:

> [it] had been the worst day of her life. That Carey Lee had been there and he had been fussing all day and that he called the light company and he had really cussed them out. They had cut his power off. Then she said he had started on Ken Davis because he had put Laura off the van. He had quit letting her ride the van and said he was going to kill Ken.

The trial court ruled that this testimony was admissible under three different hearsay exceptions: (1) present sense impression, (2) excited utterance, and (3) then existing mental, emotional, or physical condition.

Under Rule 803(1), the present sense impression exception to the hearsay rule, a witness may testify to "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." N.C. Gen.

Stat. § 8C-1, Rule 803(1) (1991). There is no rigid rule about how long is too long to be "immediately thereafter." *State v. Cummings*, 326 N.C. 298, 314, 389 S.E.2d 66, 75 (1990).

In *State v. Cummings*, the declarant drove from her home to her mother's house crying and made a statement that the defendant had kicked her out of his house. In that case, the Court found that the statement made after the trip was made sufficiently close to the event to be admissible as a present sense impression. *Id.*

In this case, after observing Carey's behavior, Lona Clark walked from her home to her daughter-in-law's house next door. Following the reasoning in *Cummings*, we hold that the statements made by Lona Clark were made sufficiently close in time to her perception of Carey's statements to be considered "immediately thereafter," and thus the trial court did not err by admitting them. Because we hold that this exception applies, we need not consider whether the statement would have been admissible on another basis.

## II.

[2] Carey Lee Clark next argues that the trial court committed reversible error by excluding the testimony of his cousin Mary Hodges. She proffered testimony on *voir dire* regarding alleged statements made by two of the State's witnesses, Carey's sisters Leowana and Patricia, that would tend to show their bias if it was believed that the statements were made. Both sisters testified at trial about incriminating statements made by Carey. Because it was error to exclude testimony about the bias of a prosecuting witness, we grant Carey a new trial.

During Carey's offer of proof, Mary Hodges testified that on 5 June 1995 she received a telephone call from Leowana. The substance of the conversation was that Carey's family was attempting to frame him for murder, and Leowana specifically mentioned that Patricia was involved. Mary Hodges also testified that she had a telephone conversation with Patricia in April of 1995 regarding the ejectment action Patricia and her husband had brought to have Carey removed from their property. Carey was out on bond at the time, and according to Hodges, Patricia called her to ask if she had contributed to Carey's bond. Mary Hodges replied that she did not understand what she was talking about, but offered to call the Avery County Sheriff's department to find out who signed Carey's bond. On learn-

ing that Carey had signed his own bond, Patricia said, "what would it take to keep Carey Lee in jail?" The trial court did not allow Mary Hodges to testify.

In North Carolina, a defendant may always challenge the credibility of a prosecuting witness that testifies against him. *State v. Wilson*, 269 N.C. 297, 152 S.E.2d 223, 225 (1967) (quoting State v. Armstrong, 232 N.C. 727, 728, 62 S.E.2d 50, 51 (1950)). In *State v. Wilson*, the defendant was charged with committing incest with his 14-year-old daughter, who was the prosecuting witness. The defendant offered testimony from a neighbor about statements made by his daughter that tended to show that she was biased against him and had a motive to have him put in prison. The Court held that the trial court's exclusion of this evidence entitled the defendant to a new trial. *Id.*

The present case is controlled by the holding of *Wilson*. In both cases, testimony from a prosecuting witness tended to incriminate the defendant. In both cases, the defense was prepared to offer testimony of statements made by the prosecuting witnesses that tended to show bias and a desire to harm the defendant. And in both cases, the defendant was prevented from presenting that evidence.

Furthermore, as the excluded evidence related to the overt and malevolent bias of witnesses on whose testimony the State largely relied to make its case, we conclude that the defendant has shown a reasonable possibility of a different result if the trial court had introduced the evidence. *See* N.C. Gen. Stat. § 15A-1443(a) (1997); *see also State v. Helms*, 322 N.C. 315, 367 S.E.2d 644 (1988) (holding that trial court committed reversible error when it excluded evidence of acts by prosecuting witness tending to indicate prosecuting witness's bias). Therefore, we are compelled to grant the defendant a new trial.

III.

After considering the defendant's other arguments, we conclude that they are meritless or are unlikely to arise in a new trial. Accordingly, we decline to address them. Furthermore, although the defendant has made a motion for appropriate relief based on the recanted testimony of one of the State's witnesses, Leowana Wortman, we do not need to remand for fact finding because we are granting him a new trial. With the motion for appropriate relief, the defendant also asked that we enjoin the prosecution's witnesses from

harassing Leowana. Because the trial court is the proper forum for such a motion, we decline to grant that relief. The defendant may renew his request at the trial court level if he so desires.

NEW TRIAL.

Judges GREENE and MARTIN, Mark D., concur.