STATE OF NORTH CAROLINA v. ANTOINE DEPRAY JACKSON, Defendant

No. COA99-393

(Filed 29 August 2000)

## 1. Firearms and Other Weapons— possession by felon—inoperability—failure to instruct

The trial court erred in a prosecution for possession of a firearm by a felon by failing to instruct on inoperability where defendant offered expert testimony that a spring and pin were missing from the pistol, that the gun was not normally operable in the condition in which the expert had received it, and that defendant would have had to alter the weapon manually to enable it to fire. Defendant's evidence raised the affirmative defense of inoperability and the trial court was thus obligated to address that defense in its charge to the jury.

## 2. Firearms and Other Weapons— possession by felon—prior manslaughter conviction—stipulation only to felony conviction—rejected

In a prosecution for carrying a concealed weapon, possession of a firearm by a felon, and resisting an officer that was reversed on other grounds, the trial court did not abuse its discretion and there was no plain error where the court admitted evidence of an earlier prior voluntary manslaughter conviction after rejecting defendant's tendered stipulation of a prior felony conviction which did not mention manslaughter. The interpretation of the federal Rule 403 in *Old Chief v. United States*, 519 U.S. 172, is not binding on our courts and that case can be distinguished in that defendant was not charged with any offenses similar to the prior conviction, thus reducing the potential of prejudice; nothing in the record reflects that the jury was told that defendant's prior conviction in any way involved use of a firearm; and N.C.G.S. § 14-415.1(b), which prohibits possession of a firearm by a felon, specifically provides that records of prior convictions of any offense shall be admissible.

Appeal by defendant from judgments entered 29 October 1998 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 16 February 2000.

**STATE v. JACKSON**

[139 N.C. App. 721 (2000)]

*Attorney General Michael F. Easley, by Assistant Attorney General Robert C. Montgomery, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

JOHN, Judge.

Defendant appeals judgments entered upon convictions by a jury of carrying a concealed weapon, possession of a firearm by a convicted felon, and resisting a public officer. In pertinent part, defendant contends the trial court erred in portions of its jury instructions and in the admission of certain evidence. We award defendant a new trial on the possession of a firearm charge.

The State's evidence at trial tended to show the following: On 24 March 1998 at approximately 7:00 a.m., Charlotte-Mecklenburg Police Department (the Department) Officers Jeffrey Troyer (Troyer) and John Robert Garrett (Garrett) were dispatched to investigate a complaint of a man wearing a yellow jacket brandishing a gun into the air. Upon arriving at the scene, the officers noticed a man in a yellow jacket, later identified as defendant, and approached him from different directions.

Garrett asked defendant if he might talk with him. Defendant responded in the affirmative and Garrett stated he would first like to search defendant for weapons. Defendant agreed and during the search stated, "oh, you're looking for the guy that had the gun. I'll show you right where he's at." Garrett then requested that defendant raise his arms. As the latter complied, Troyer noticed a chrome-plated handgun in the waistband of defendant's pants. Troyer yelled, "gun," and was able to seize the weapon while Garrett held defendant's arms. Reaching for his handcuffs, Garrett advised defendant he was under arrest for carrying a concealed weapon. Defendant thereupon broke away and ran, but was apprehended after a brief chase.

Defendant did not testify, but called as a witness Todd Nordoff (Nordoff), a firearm and toolmark examiner with the Department Crime Laboratory. Nordoff testified he had examined a handgun, identified and admitted into evidence as the weapon recovered from defendant on 24 March 1998, and discovered it lacked an internal pin and spring. Nordoff stated the missing spring played an "integral" role in the chain reaction permitting the gun to fire, and that, absent the spring, the weapon "was not normally operable."

However, Nordoff further explained the gun could be fired by removing the grip, which Nordoff had done with a screwdriver, and manually tripping an internal mechanism. He also indicated the weapon could "possibl[y]" be fired "by hitting it hard on top of the weapon," but stated he had not attempted to do so. According to Nordoff, although he generally fired weapons being tested, he did not fire the handgun in question due to its unsafe condition.

The jury subsequently returned guilty verdicts as indicated above, and the trial court imposed a consolidated sentence of fifteen to eighteen months imprisonment on the concealed weapon and possession of a firearm convictions, and a consolidated suspended sentence of forty-five days on the resisting a public officer offense and defendant's plea of guilty to second degree trespass, the sentences to run consecutively. Defendant appeals.

[1] Defendant first contends the trial court erred by rejecting his written request that the court instruct the jury regarding the operability of the weapon at issue with reference to the offense of possession of a firearm by a felon. At the charge conference, the trial court stated it would not "instruct the[ jury] that it's necessary [the gun] fire in order for it to be a handgun." The court further indicated:

> I will allow counsel in arguments to argue the point of operability on the question of whether or not this item constituted a handgun or a firearm.
>
> . . . I anticipate it's entirely possible that the jury will come back and ask the question in order for a gun to be a handgun does it have to be capable of firing.
>
> If the jury asks that question I'm going to instruct the jury substantially in the following manner: That is, members of the jury, the question of whether or not State's Exhibit Number 1 is a handgun is a question for you to decide. You are to decide whether or not that item is a handgun by its appearance and other characteristics based upon your examination of it in open court.

The jury was thereafter instructed at trial as follows:

> Now I charge that for you to find the defendant guilty of possessing a handgun after having been convicted of a felony the State must prove three things beyond a reasonable doubt; first,

that on . . . October 15th, 1991 the defendant was convicted of the offense of voluntary manslaughter in Mecklenburg County Superior Court.

. . . .

Second, that thereafter the defendant possessed a handgun.

. . . .

And third, that this possession was not in the defendant's home or in his lawful place of business.

It is well settled that a trial court must instruct on all "substantive" or "material" features arising on the evidence and the law applicable thereto without a special request. *State v. Ward*, 300 N.C. 150, 155, 266 S.E.2d 581, 585 (1980) (failure to instruct on all substantive features of case "result[s] in reversible error"). Similarly, a

defendant is entitled to have the jury consider and pass upon any and all defenses which arise upon the evidence, under proper instructions by the court.

*State v. Faust*, 254 N.C. 101, 111, 118 S.E.2d 769, 775 (no error in court's refusal to instruct on defense of accident and misadventure where evidence did not give rise to such defense), *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961).

N.C.G.S. § 14-415.1 (1999), prohibiting possession of firearms by convicted felons, provides:

It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction as defined in [N.C.G.S. § 14-288.8(c) (1999)].

G.S. § 14-415.1(a).

A "firearm" is defined by N.C.G.S. § 14-409.39(2) (1999), as "[a] handgun, shotgun, or rifle which expels a projectile by action of an explosion." As with any essential element of a criminal offense, the State has the burden of proving beyond a reasonable doubt that the object possessed by a defendant charged under G.S. § 14-415.1(a) is indeed a "firearm." *See State v. McNeill*, 78 N.C. App. 514, 517, 337

S.E.2d 172, 174 (1985) (under G.S. § 14-415.1, State required to prove defendant possessed handgun), *disc. review denied*, 316 N.C. 383, 342 S.E.2d 904 (1986).

In *State v. Baldwin*, 34 N.C. App. 307, 237 S.E.2d 881 (1977), the defendant also was charged with possession of a firearm by a felon in violation of G.S. § 14-415.1, *id.* at 308, 237 S.E.2d at 881. Arguing the State was required to prove the weapon was operable in order to sustain a conviction under the statute, *id.*, the defendant cited cases from other jurisdictions construing similar statutes as intimating that "guns incapable of being fired were not 'firearms' within the meaning of th[os]e statutes," *id.* at 309, 237 S.E.2d at 882 (citing *Commonwealth v. Layton*, 307 A.2d 843, 844 (Pa. 1973) (statute "obviously intended to cover only objects which could cause violence by firing a shot")).

This Court distinguished the cited authorities by noting there was "uncontroverted evidence in each case that the gun[s] . . . w[ere] inoperable," *id.*, whereas in the case under consideration there had been no evidence of inoperability, *id.* In the absence of evidence of inoperability, we held the case was properly submitted to the jury. *Id.*; *see also Layton*, 307 A.2d at 844 (absent evidence of inoperability, fact finder may "infer operability from an object which looks like, feels like, sounds like or is like, a firearm").

In *State v. Fennell*, 95 N.C. App. 140, 382 S.E.2d 231 (1989), the defendant, convicted of possession of a "weapon of mass death and destruction" in violation of G.S. § 14-288.8, asserted the State was required to prove operability of the disassembled sawed-off shotgun in his possession as an element of the offense and that the trial court erred in failing to instruct that the shotgun could not be considered a "weapon" under the statute because it could not fire. *Fennell*, 95 N.C. App. at 141, 382 S.E.2d at 233. Initially, we noted G.S. § 14-288.8 excludes devices "not likely to be used as a weapon," *id.*, and therefore devices

> lose their status as weapons of mass death and destruction once they are found to be totally inoperable and incapable of being readily made operable.

*Fennell*, 95 N.C. App. at 144-45, 382 S.E.2d at 233.

Then, considering which party had the burden of proof concerning operability, we held that "operability is not an element of the crime to be proven by the State . . . [but] is, rather, an affirmative

defense," *id.* at 145, 382 S.E.2d at 233, and noted that "[t]hough this issue is one of first impression in this state, our holding is consistent with *State v. Baldwin*," *id.*

Specifically, we stated:

> In *Baldwin*, the defendant was charged with violating Section 14-415.1 . . . [and] we held that when the defendant fails to produce any evidence of *inoperability*, the State does not have to submit evidence of *operability*. Given that the statute [G.S. § 14-415.1] in question in *Baldwin* and the one at issue here [G.S. § 14-288.8] are materially the same, it logically follows that the burden of proof regarding inoperability of a weapon of mass death and destruction falls on the defendant.

*Id.* at 145, 382 S.E.2d at 233-34. We concluded the defendant had failed to meet his burden because he "simply rais[ed] the issue of potential inoperability" and offered no evidence or testimony to support such assertion. *Id.* at 145, 382 S.E.2d at 234.

Based upon *Baldwin* and *Fennell*, it is apparent inoperability constitutes an affirmative defense in a prosecution under G.S. § 14-415.1(a). *See id.* at 145, 382 S.E.2d at 233 ("operability is not an element of the crime to be proven by the State . . . [but] is, rather an affirmative defense"). As with all affirmative defenses, the burden, both of production and persuasion, rests at all times with the defendant. *State v. Hageman*, 307 N.C. 1, 27, 296 S.E.2d 433, 448 (1982). Finally, upon a defendant's presentation of evidence of the affirmative defense of inoperability, the trial court must subsequently instruct the jury regarding the effect of such evidence, with or without request. *See State v. Dooley*, 285 N.C. 158, 163, 203 S.E.2d 815, 818 (1974) ("[i]t is the duty of the [trial] court to charge the jury on all substantial features of the case arising on the evidence without special request . . . [a]nd all defenses presented by defendant's evidence are substantial features"; therefore, where defendant offered evidence of self-defense, trial court was required to instruct jury thereon) (citations omitted).

*In re Cowley*, 120 N.C. App. 274, 461 S.E.2d 804 (1995) reiterated the principles established in *Baldwin* and *Fennell* to distinguish "N.C. Gen. Stat. § 14-269.2(b) which makes it a felony to carry a firearm on educational property," *id.* at 274-75, 461 S.E.2d at 805, from, *inter alia*, G.S. § 14-415.1 and G.S. § 14-288.8, *id.* at 275, 461 S.E.2d at 805-06.

The defendant in *Cowley* argued operability was necessary for conviction under G.S. § 14-269.2(b), asserting

> North Carolina courts have interpreted three other criminal firearm statutes [including G.S. § 14-415.1 and G.S. § 14-288.8] as requiring operable weapons . . . to constitute a violation.

*Id.* at 275, 461 S.E.2d at 805.

> However, we held G.S. § 14-269.2(b)

> [wa]s distinguishable from the[ cited] statutes and d[id] not require that a gun be operable in order to establish a violation . . . .

> . . . [G.S.] § 14-269.2(b) states it is illegal to carry *any gun* on school property. [G.S.] § 14-288.8(c) is markedly different because it deals with "weapon[s] of mass death and destruction," going into great detail to define these weapons[, and because t]he focus of [G.S.] § 14-288.8 is considerably different from the concept of *any gun* used in [G.S.] § 14-269.2(b). Finally, [G.S.] § 14-415.1(a) prevents a convicted felon from . . . possessing "any handgun . . . with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction . . . ." We also find this statute encompasses a narrow range of guns, while [G.S.] § 14-269.2(b) prohibits *any gun* . . . .

*Id.* at 275, 461 S.E.2d at 805-06.

Finally, we concluded, "[p]ublic policy favors that [G.S.] § 14-269.2(b) be treated differently from the other firearm statutes," *id.* at 276, 461 S.E.2d at 806, which

> are concerned with the increased risk of endangerment, while the purpose of [G.S.] § 14-269.2(b) is to deter students and others from bringing any type of gun onto school grounds. The question of operability is not relevant [under G.S. § 14-269.2(b)] because [its] focus . . . is the increased necessity for safety in our schools.

*Id.*

*Sub judice*, defendant offered testimony by Nordoff, an expert in the field of firearm and toolmark examination, who examined the weapon at issue. Nordoff discovered "a spring and a pin missing inter-

**STATE v. JACKSON**

[139 N.C. App. 721 (2000)]

nally in the pistol," and testified the missing spring played an "integral" role in the chain reaction necessary to fire the gun. Nordoff noted the weapon's firing "mechanism did not operate normally" because the gun never fired when he "pulled the trigger." He removed the grip with a screwdriver and was then able to move the mechanism manually so that it operated properly and could be fired. Nordoff also related the possibility that the gun might fire by "hit[ting] it hard enough" on top, but stated he had not attempted such method. Nordoff testified that the gun was "not normally operable" in the condition he received it, and that defendant would have had to alter the weapon manually, as Nordoff had done after removing the grip with a screwdriver, to enable it to fire.

Defendant's evidence thereby raised the affirmative defense of inoperability, *see Baldwin,* 34 N.C. App. at 309, 237 S.E.2d at 882, and *Fennell,* 95 N.C. App. at 145, 382 S.E.2d at 233, though not so completely as to foreclose consideration by the jury. The trial court was thus obligated to address such defense in its charge to the jury. *See Dooley,* 285 N.C. at 163, 203 S.E.2d at 818. In failing to instruct on inoperability under the circumstances *sub judice,* therefore, the trial court erred and defendant is entitled to a new trial on the charge of possession of a firearm by a convicted felon. *See Ward,* 300 N.C. at 155, 266 S.E.2d at 585.

[2] Because it is likely to recur on retrial, we also address defendant's contention that the trial court erred in admitting evidence of an earlier prior voluntary manslaughter conviction. Prior to trial, defendant offered to "stipulate that [he] . . . was on the date in question a convicted felon" under G.S. § 14-415.1, and requested that the jury be instructed on the stipulation without mention of the voluntary manslaughter conviction. The State rejected defendant's offer, stating it had

> alleged a prior felony conviction in the indictment . . . [and a]s part of the evidence [it] can bring that out and present that as an element of proving the crime.

The trial court declined to accept defendant's tendered stipulation, and thereafter allowed the State to introduce and publish to the jury a certified copy of the judgment and commitment reflecting that defendant had been found guilty of voluntary manslaughter on 15 October 1991. Subsequently, the State in its closing argument and the trial court in its jury instructions reiterated that defendant had been convicted of voluntary manslaughter.

Initially, we note defendant has failed to preserve this issue for appellate review. *See* N.C.R. App. P. 10(b)(1) (to preserve question for appellate review, defendant "must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make"). Defendant interposed no objection to the trial court's rejection of his proffered stipulation, nor to the court's jury charge or the prosecutor's argument reiterating the prior conviction.

Notwithstanding, on appeal defendant has "specifically and distinctly allege[d]" that admission of his prior conviction in lieu of the tendered stipulation constituted plain error, *State v. Alston*, 131 N.C. App. 514, 517, 508 S.E.2d 315, 318 (1998) ("where a party has not preserved a question for review, he must specifically and distinctly allege that the trial court's action amounted to plain error in order to have the error reviewed on appeal"), thereby allowing our review under N.C.R. App. P. 10(c)(4) (question not preserved at trial in criminal case "may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error").

Although the "plain error" rule permits appellate review of assignments of error not otherwise preserved for appellate review, *see State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983), the rule is to be applied

> "cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error,' "

*id.* (citation omitted).

> [I]n order to prevail under the plain error rule, defendant must convince this Court that (1) there was error and (2) without this error, the jury would probably have reached a different verdict.

*State v. Najewicz*, 112 N.C. App. 280, 294, 436 S.E.2d 132, 141 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 130 (1994).

Defendant contends the trial court should have enforced his proffered stipulation and excluded evidence concerning his prior conviction because, although relevant, "the probative value of . . . [such evidence] was substantially outweighed by the danger of unfair prejudice." *See* N.C.G.S. § 8C-1, Rule 403 (1999) (Rule 403)

("[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court, *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986), and the court's ruling may be reversed under such standard only upon a showing that it could not have been the result of a reasoned decision, *State v. Thompson*, 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985).

Defendant relies upon *Old Chief v. United States*, 519 U.S. 172, 136 L. Ed. 2d 574 (1997). The defendant in *Old Chief* was charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (1994). *Id.* at 174, 136 L. Ed. 2d at 584; *see* 18 U.S.C. § 922(g)(1) (unlawful for any person "convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" to possess a firearm). The defendant offered to stipulate or admit his "felon" status in order to preclude introduction of evidence he had been convicted of assault causing serious bodily injury. *Old Chief*, 519 U.S. at 175, 136 L. Ed. 2d at 585; *see also* 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 198 (5th ed. 1998) (judicial admission "is a formal concession made by a party (usually through counsel) in the course of litigation for the purpose of withdrawing a fact or facts from the realm of dispute," and may be made "by stipulation entered into before or at trial"). As in the case *sub judice*, the government rejected the offer, the trial court declined to enforce it, the evidence was introduced, and the defendant was convicted of the firearm offense. *Old Chief*, 519 U.S. at 177, 136 L. Ed. 2d at 585-86.

The United States Supreme Court ultimately reversed the conviction, holding that although the prior conviction was relevant to the charged offense because it accorded the defendant the legal status of a felon under 18 U.S.C. § 922(g)(1), *id.* at 178-79, 136 L. Ed. 2d 586-87, the probative value of the nature of the conviction was substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403, *id.* at 191, 136 L. Ed. 2d at 595.

Acknowledging that prosecution of a criminal offense requires "evidentiary depth to tell a continuous story," *id.* at 190, 136 L. Ed. 2d at 593, and that as a general matter,

a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the [prosecution] chooses to present it,

*id.* at 186-87, 136 L. Ed. 2d at 592; *see* 2 Broun, § 198 ("a stipulation or admission by the defendant cannot limit the State's *right* to prove all essential elements of its theory of the case"), the United States Supreme Court concluded such principles have

> virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him,

*Old Chief,* 519 U.S. at 190, 136 L. Ed. 2d at 593-94; *see also* Kathryn Cameron Walton, Note, *An Exercise In Sound Discretion: Old Chief v. United States,* 76 N.C.L. Rev. 1053, 1061 (1998) (*Old Chief* effectively "transcended the general rule that permits the prosecution to choose the evidence it will use to prove its case").

The official commentary to Rule 403 indicates our Rule 403 is identical to the federal Rule 403 applied in *Old Chief.* Rule 403 commentary. "[N]evertheless[, we] are not bound by the United States Supreme Court's holding in *Old Chief.*" *State v. Faison,* 128 N.C. App. 745, 747, 497 S.E.2d 111, 112 (1998); *see also State v. Lamb,* 84 N.C. App. 569, 580, 353 S.E.2d 857, 863 (1987) (non-constitutional decision of United States Supreme Court "cannot bind or restrict how North Carolina courts interpret and apply North Carolina evidence law"), *aff'd,* 321 N.C. 633, 365 S.E.2d 600 (1988). In any event, we are not required to reject the holding of *Old Chief* because the facts therein are distinguishable from those herein.

In reversing the defendant's conviction in *Old Chief,* the Supreme Court emphasized that

> [w]here a prior conviction was for a gun crime . . . the risk of unfair prejudice would be especially obvious, and [defendant] sensibly worried that the prejudicial effect of his prior assault conviction, significant enough with respect to the current gun charges alone, would take on added weight from the related assault charge against him.

*Old Chief,* 519 U.S. at 185, 136 L. Ed. 2d at 591. According to the United States Supreme Court, therefore, the danger of prejudice in *Old Chief* was "substantial[]," *id.* at 191, 136 L. Ed. 2d at 595; *see also* Rule 403, in that the defendant was charged, in addition to the possession of a firearm offense, with assault with a deadly weapon, an offense substantially similar to the crime of which he had been

previously convicted and upon which the government relied to establish his status as a "felon," *Old Chief,* 591 U.S. at 185, 136 L. Ed. 2d at 591.

By contrast, defendant herein was not charged with any attendant offenses similar to his prior conviction of voluntary manslaughter, thus reducing the potential of prejudice in comparison to *Old Chief.* Further, nothing in the record reflects the jury was informed defendant's prior conviction in any way involved use of a firearm.

In addition, we note that our statute prohibiting possession of a firearm by a convicted felon specifically provides as follows:

When a person is charged under this section, records of prior convictions of any offense, whether in the courts of this State, or in the courts of any other state or of the United States, shall be admissible in evidence for the purpose of proving a violation of this section.

G.S. § 14-415.1(b). No similar provision may be found in the statute at issue in *Old Chief. See* 18 U.S.C. § 992.

In that our courts are not bound by *Old Chief, see Faison,* 128 N.C. App. at 747, 497 S.E.2d at 112, and in light of the foregoing distinctions between the circumstances in the present case and those in *Old Chief,* we are unable to say either that the trial court's decision to comply with G.S. § 14-415.1(b) and allow documentary evidence of defendant's prior felony conviction, notwithstanding defendant's tendered stipulation, or that the court's determination that the danger of unfair prejudice did not "substantially" outweigh the probative value of such evidence, *see* Rule 403, "could not have been the result of a reasoned decision," *Thompson,* 314 N.C. at 626, 336 S.E.2d at 82. The trial court therefore did not abuse its discretion in its ruling and defendant's assertion of error, much less "plain error," is unavailing. *See Najewicz,* 112 N.C. App. at 294, 436 S.E.2d at 141 (defendant must prove not only error, but also that without the error, "jury would probably have reached a different verdict"); *see also Odom,* 307 N.C. at 660, 300 S.E.2d at 378 (claimed "plain" error must be a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' " or a " 'grave error which amounts to a denial of a fundamental right of the accused' ") (citations omitted).

Finally, defendant asserts "plain error" with reference to the charge of resisting a public officer. Suffice it to state we perceive no

IN RE BRIM

[139 N.C. App. 733 (2000)]

"plain error" as alleged by defendant in the trial of that offense, but reverse and remand for a new trial defendant's conviction on the charge of possession of a firearm by a felon.

New trial in part; no error in part.

Judges LEWIS and EDMUNDS concur.