STATE OF NORTH CAROLINA v. BERNARD ROMEL LITTLE

No. COA08-82

(Filed 5 August 2008)

**1. Evidence— prior crimes or bad acts—involuntary manslaughter—State's refusal to accept defendant's stipulation**

The trial court did not abuse its discretion in an assault with a deadly weapon with intent to kill inflicting serious injury, possession of a firearm by a convicted felon, and discharging a firearm into occupied property case by allowing the State to present evidence of defendant's prior felony conviction for involuntary manslaughter and then failing to give a limiting instruction with respect to evidence of defendant's prior conviction when defendant made an offer to stipulate to his status as a felon because: (1) the State carries the burden of proof beyond a reasonable doubt in all criminal cases, and thus the State is not required to accept a stipulation in lieu of an element; (2) it cannot be said that admission of the record evidence of defendant's prior involuntary manslaughter conviction in lieu of defendant's stipulation to a prior felony conviction so risked unfair prejudice that it substantially outweighed the discounted probative value of the record of conviction in violation of Rule 403; (3) the admission did not amount to propensity evidence in violation of Rule 403 when evidence of defendant's prior felony conviction established an element of the crime charged which was possession of a firearm by a felon; and (4) a review of the record revealed that the

failure to give a limiting instruction did not amount to plain error, and in its final instruction the trial court stated the manner in which the evidence of prior conviction could be used.

2. **Evidence— hearsay exceptions—present sense impression—excited utterance—regularly conducted activity—public records and reports**

The trial court did not abuse its discretion in an assault with a deadly weapon with intent to kill inflicting serious injury, possession of a firearm by a convicted felon, and discharging a firearm into occupied property case by denying the admission of testimony from the SBI Special Agent about an unavailable witness's statements made several hours after the pertinent shooting while sitting in the agent's state issued vehicle outside the police department, even though defendant contends it was admissible under various hearsay exceptions, because: (1) the basis of the present sense impression exception under N.C.G.S. § 8C-1, Rule 803(1) is that closeness in time between the event and the declarant's statement reduces the likelihood of deliberate or conscious misrepresentation, and the record revealed the SBI Special Agent arrived to assist local law enforcement several hours after the pertinent incident and located and interviewed, at some point during the day, a witness who was not available at trial; (2) an excited utterance under N.C.G.S. § 8C-1, 803(2) is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, and the witness's statements were not the product of a spontaneous reaction when the Special Agent testified that several hours separated the shooting and her interview with the witness; and (3) although defendant contends the testimony was admissible on the basis that the statement was taken as a part of the SBI's regularly conducted activity under N.C.G.S. § 8C-1, Rule 803(6) or was admissible as a public record and report under N.C.G.S. § 8C-1, Rule 803(8), SBI reports that are not admissible under the public record exception are not admissible as business records, the public records exception does not apply where the sources of information or other circumstances indicate lack of trustworthiness, and it cannot be said that the circumstances surrounding the witness's statement so minimized the risk of inaccuracy and imparted a sense of trustworthiness as to allow the Special Agent to testify to the witness's statement as evidence of the truth of the matter asserted.

**3. Assault— deadly weapon with intent to kill inflicting serious injury—accomplice—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury under an accomplice theory even though defendant contends that there was insufficient evidence to show that he joined with one or more people in a common scheme or plan to commit a crime because: (1) there was sufficient evidence to conclude that defendant and another person shared an intent to use a gun to scare the victim; and (2) the evidence supported the theory that defendant aided by driving the SUV that chased the victim into the gas station parking lot where the other person shot the victim while defendant was present and acting in concert with the other person.

Appeal by defendant from judgments entered 17 August 2007 by Judge Phyllis Gorham in Sampson County Superior Court. Heard in the Court of Appeals 22 May 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Sarah Y. Meacham, for the State.*

*Stewart, Stewart, Munz & Assoc., by Ryan McKaig, for defendant-appellant.*

BRYANT, Judge.

Defendant Bernard Little appeals from judgments and commitments entered 17 August 2007 in Sampson County Superior Court after a jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, possession of a firearm by a convicted felon, and discharging a firearm into occupied property. We find no error.

The evidence presented at trial tended to show that on the morning of 27 February 2006, Bruce Owens and defendant were riding in defendant's car when Owens called Elerico Howard. Owens informed Howard that Owens believed the brother of a man who allegedly robbed Howard was in the vicinity. Shortly thereafter, Howard met Owens and defendant at defendant's home, and all three men left in Howard's white SUV hoping to find the brother of the man that allegedly robbed Howard. At some point that morning, Howard received a tip that the alleged robber's brother, Kurtis Johnson, was

at a local Head Start child care facility. Defendant and his two companions drove to confront Johnson. They parked approximately two blocks from the Head Start, and Owens and Howard walked the rest of the way while defendant remained in the SUV. Near the Head Start, Owens saw Kurtis Johnson pull away in a white car. Owens pulled a handgun from his waistband and fired until he emptied the gun clip.

Unable to hit the car, Owens and Howard ran back to the SUV, climbed in through the hatchback, and sat in the back seat. Owens left his firearm there and took Howard's. Owens testified that he "wanted to have the gun and [he] was going to try to scare the victim up if [they] caught up with him."

Defendant, Owens, and Howard chased the white car into a parking lot at Tony's Amoco and Grill. Owens got out of the SUV and ran to the passenger side of the white car. The white car attempted to drive off. Owens fired through the white car's back window, and struck Kurtis Johnson in the face. The white car stopped; Owens returned to the SUV; and defendant, Howard,. and Owens left the scene.

At 11:09 a.m., a 9-1-1 call was placed concerning shots fired at Tony's Gas and Grill. Several hours after the shooting, the North Carolina State Bureau of Investigation (SBI) was asked to assist local law enforcement, at which time, SBI Special Agent Kellie Eason reported to the scene. At some point during the day, Special Agent Eason located an eyewitness.

The witness was not available for trial, but on cross-examination, defendant attempted to elicit from Special Agent Eason the witness's statements. The trial court denied defendant the opportunity to question Special Agent Eason regarding the witness's statements on hearsay grounds.

So, with the jury excused, Special Agent Eason, on voir dire, made an offer of proof with regard to the witness's statements. Special Agent Eason testified that the witness stated a white car was "flying down the road" followed by an SUV. The driver jumped out of the SUV, ran up to the white car, and shot out the rear windshield and one of the rear side windows. Kurtis Johnson staggered out of the car. The witness called 9-1-1 and tried to plug Johnson's wounds. The witness asked the victim who did this and the victim said, "Bruce did it." The witness did not know how many people were in the SUV—maybe two or three.

Defendant was charged with, among other things, possession of a firearm by a convicted felon. At trial, the State offered evidence of defendant's prior felony conviction. Defendant objected on grounds of violating Rules of Evidence 403 and 404 but stipulated to the existence of a prior felony conviction. The trial court overruled defendant's objection, and the State presented evidence of defendant's prior conviction for involuntary manslaughter, a class F felony.

At the close of the State's evidence and at the close of all evidence, the trial court denied defendant's motions to dismiss the charges for insufficient evidence. A jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, discharging a firearm into occupied property, and possession of a firearm by a convicted felon. The trial court entered judgments and commitments on those charges. Defendant appeals.

---

On appeal, defendant raises three issues: whether the trial court erred by (I) allowing the State to present evidence of defendant's prior felony conviction, (II) denying the admission of testimony by SBI Special Agent Kellie Eason, and (III) denying defendant's motions to dismiss a charge.

*I*

[1] Defendant first questions whether the trial court erred by allowing the State to present evidence of defendant's prior felony conviction and then failing to give a limiting instruction with respect to evidence of defendant's prior conviction. Defendant argues that when he made an offer to stipulate to his status as a felon, the admission of evidence regarding his prior felony conviction was in violation of North Carolina Rules of Evidence, Rules 401, 402, 403, 404, and 609, as well both the United States Constitution and the North Carolina Constitution.

We note defendant did not argue constitutional error or error under Rules of Evidence 401, 402, or 609 at trial. Thus, those arguments are not preserved for our review. *See State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 514 (1998) (citation omitted); N.C.R. App. P. 10(b)(1) (2007). We review the remaining arguments to determine if there was an abuse of discretion. *See State v. Roache*, 358 N.C. 243, 284, 595 S.E.2d 381, 408 (2004). "A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision."

*State v. Cummings,* 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (internal and external citations and quotations omitted).

Under North Carolina Rules of Evidence, Rule 403, our General Assembly has stated that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.R. Evid. 403 (2007).

The United States Supreme Court addressed a similar issue, in application of the Federal Rules of Evidence in *Old Chief v. United States,* 519 U.S. 172, 136 L. Ed. 2d 574 (1997).[1] The defendant in *Old Chief* was charged with assault with a deadly weapon and violating 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by anyone with a prior felony conviction. *Id.* The defendant had a previous felony conviction for assault causing serious bodily injury. *Id.*

In a pre-trial motion, the defendant requested an order from the district court restricting the prosecution from mentioning or offering into evidence the defendant's prior criminal convictions, *"except* to state that the Defendant has been convicted of a crime punishable by imprisonment exceeding one (1) year." *Id.* at 175, 136 L. Ed. 2d at 584. In turn, the defendant offered to stipulate, agree, and request that the district court instruct the jury he had been convicted of a crime punishable by imprisonment exceeding one year. *Id.* at 175, 136 L. Ed. 2d at 585. The district court denied the defendant's motion, and at trial, over objection, the prosecution submitted into evidence the defendant's prior judgment and commitment for assault causing serious bodily injury. *Id.* at 177, 136 L. Ed. 2d at 585. A jury found the defendant guilty on all charges. *Id.* at 177, 136 L. Ed. 2d at 586.

On review, the United States Supreme Court held the admission of the name and general character of the prior felony conviction were relevant, *Id.* at 178-79, 136 L. Ed. 2d at 586-87; but where the stipulation satisfied the element of a prior felony conviction "the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available," *Id.* at 191, 136 L. Ed. 2d at 595.

---

1. While "[t]he North Carolina Rules of Evidence mirror almost completely the Federal Rules of Evidence," *State v. Lamb,* 84 N.C. App. 569, 580 n.3, 353 S.E.2d 857, 863 n.3 (1987), non-constitutional decisions by the United States Supreme Court cannot bind or restrict how North Carolina courts interpret and apply North Carolina evidence law. *Id.* at 580, 353 S.E.2d at 863.

In *State v. Jackson*, 139 N.C. App. 721, 535 S.E.2d 48 (2000), *rev'd on other grounds*, 353 N.C. 495, 546 S.E.2d 570 (2001), this Court addressed a scenario similar to that in *Old Chief*. In *Jackson*, the defendant was convicted of carrying a concealed weapon, resisting a public officer, and with possession of a firearm by a convicted felon in violation of N.C. Gen. Stat. § 14-415.1(a). *Id.* As in *Old Chief*, the trial court denied the defendant's offer to stipulate to the bare fact of a prior felony conviction in lieu of presenting record evidence of his prior conviction to the jury. *Id.* at 728, 535 S.E.2d at 53. Under a plain error standard of review, this Court held the "defendant . . . was not charged with any attendant offenses similar to his prior conviction of voluntary manslaughter, thus reducing the potential of prejudice in comparison to *Old Chief*. Further, nothing in the record reflects the jury was informed [the] defendant's prior conviction in any way involved use of a firearm." *Id.* at 732, 535 S.E.2d at 55.

Here, defendant was charged with attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, possession of a firearm by a convicted felon, and discharging a firearm into occupied property. At trial, the State offered evidence of defendant's prior criminal offenses. Defendant objected under Rules of Evidence 403 and 404 but stipulated to the existence of a prior felony. The trial court overruled defendant's objection, and the State admitted evidence of defendant's prior conviction for involuntary manslaughter, a class F felony. We note the State carries the burden of proof—beyond a reasonable doubt—in all criminal cases, and under our jurisprudence (because of that burden) the State is not required to accept a stipulation in lieu of an element. *See Old Chief*, 519 U.S. at 186-87, 136 L. Ed. 2d at 591-92 ("the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it").

"Involuntary manslaughter is the unlawful killing of a human being *without* malice, *without* premeditation and deliberation, and *without* intention to kill or inflict serious bodily injury." *State v. McCollum*, 157 N.C. App. 408, 412, 579 S.E.2d 467, 470 (2003) (citation omitted) (emphasis added). In the present case, defendant was charged with attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, discharging a firearm into occupied property, and possession of a firearm by a convicted felon. On the facts of this case, we cannot say admission of the

record evidence of defendant's prior involuntary manslaughter conviction in lieu of defendant's stipulation to a prior felony conviction so risked unfair prejudice that it substantially outweighed the discounted probative value of the record of conviction. *Jackson*, 139 N.C. App. 721, 535 S.E.2d 48. Therefore, we cannot hold it was a violation of Rule 403 to admit the record evidence of defendant's felony conviction even though the admission was available.

Defendant also argues that the admission of his prior felony conviction amounted to propensity evidence in violation of Rules of Evidence, Rule 404. We disagree.

Under the Rules of Evidence, Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes . . . ." N.C.R. Evid. 404(b) (2007). "We have held that Rule 404(b) is a rule of inclusion, subject to the single exception that such evidence must be excluded if its *only* probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Williams*, 156 N.C. App. 661, 663, 577 S.E.2d 143, 145 (2003) (citations omitted) (original emphasis).

Here, evidence of defendant's prior felony conviction established an element of the crime charged, possession of a firearm by a convicted felon. Therefore, defendant's argument that admission of record evidence of his prior felony conviction amounts to propensity evidence, in violation of Rule 404, is overruled.

Defendant further argues the trial court's failure to give a limiting instruction as to the purpose of the evidence of defendant's prior conviction amounts to plain error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) (citation and emphasis omitted). Based on our review of the evidence provided in the record, we cannot say the failure of the trial court to give a limiting instruction regarding the purpose of the evidence of defendant's prior conviction amounts to plain error. Further, in its final instructions to the jury the trial court stated the manner in which the evidence of prior conviction could be used. Accordingly, defendant's assignment of error is overruled.

## II

**[2]** Defendant next argues the trial court erred by denying the admission of testimony by SBI Special Agent Kellie Eason. Defendant argues the proffered testimony of Special Agent Eason was admissible because the testimony included exculpatory evidence and was subject to four exceptions to the hearsay rule: present sense impression, an excited utterance, regularly conducted activity exception, and public records and reports.

"The standard of review for this Court assessing evidentiary rulings is abuse of discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hagans*, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006) (citations omitted).

Under North Carolina Rules of Evidence, Rule 801(c), hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.R. Evid. 801(c) (2007). "Hearsay is not admissible except as provided by statute or by these rules." N.C.R. Evid. 802 (2007). The United States Supreme Court has dictated broad standards governing the constitutionality of hearsay admissiona in criminal prosecutions, specifically that "[h]earsay must contain 'indicia of reliability.'" *State v. Roper*, 328 N.C. 337, 359, 402 S.E.2d 600, 613 (1991) (citations omitted). "[H]earsay statements that fall within a 'firmly rooted hearsay exception' inherently possess an 'indicia of reliability.'" *Id.* at 359, 402 S.E.2d at 613 (citations omitted). Under North Carolina Rule of Evidence 803, titled "Hearsay exceptions; availability of declarant immaterial," a present sense impression, an excited utterance, records of regularly conducted activity, and public records and reports "are not excluded by the hearsay rule." N.C.R. Evid. 803 (2007).

A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." N.C.R. Evid. 803(1) (2007). But, "[t]here is no rigid rule about how long is too long to be 'immediately thereafter.' " *State v. Clark,* 128 N.C. App. 722, 725, 496 S.E.2d 604, 606 (1998) (citation omitted). Still, "[t]he basis of the present sense impression exception is that closeness in time between the event and the declarant's statement reduces the likelihood of deliberate or conscious misrepresentation." *State v. Smith,* 152 N.C. App. 29, 36, 566 S.E.2d 793, 798 (2002) (citation omitted).

In *State v. Clark,* this Court held that the witness's statements were admissible as a present sense impression where the declarant observed the defendant's behavior, walked next door to the witness's home, and disclosed what she observed. *Clark,* 128 N.C. App. at 724-25, 496 S.E.2d at 605-06. In *State v. Smith,* this Court held that where the declarant's statement was made the same day as the event described but after spending all afternoon with the police, the declarant's statement did not qualify as a present sense impression. *Smith,* 152 N.C. App. at 36, 566 S.E.2d at 799.

The record before us indicates that at 11:09 a.m., a 9-1-1 call was placed concerning shots fired at Tony's Gas and Grill. Several hours later, the SBI was asked to assist local law enforcement. SBI Special Agent Kellie Eason reported to the scene. At some point that day, Special Agent Eason located and interviewed a witness. The witness was not available at trial. The trial court precluded Special Agent Eason's hearing testimony. It was not an abuse of discretion to deny admission of the witness's statements as a present sense impression.

An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.C.R. Evid. 803(2) (2007). "In order to fall within this hearsay exception, there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith,* 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985) (citation omitted). While the time lapse between the startling event and declarant's statement traditionally determines whether the statement was spontaneously made, "the modern trend is to consider whether the delay in making the statement provided an opportunity to manufacture or fabricate the statement." *Id.* at 87, 337 S.E.2d at 841.

Again, Special Agent Eason testified that several hours separated the shooting and her interview with the witness. Clearly, the witness's statements were not the product of a "spontaneous reaction, not one resulting from reflection or fabrication." *Id.* at 86, 337 S.E.2d at 841. Therefore, it was not an abuse of discretion to deny admission of the witness's statement as an excited utterance.

Defendant also argues Agent Eason's testimony regarding the witness's statement was admissible as an exception to the exclusion of hearsay statements on the basis that the statement was taken as a part of the SBI's regularly conducted activity, under Rule of Evidence 803(6), or it was admissible as a public record and report, under Rule of Evidence 803(8).

Evidence recorded in the course of a regularly conducted activity, as defined under Rule 803(6), is not excluded by the hearsay rule where

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

N.C.R. Evid. 803(6) (2007).

Likewise, a public record and report, as defined under Rule 803(8), is not excluded by the hearsay rule where

[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law-enforcement personnel, or (C) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

N.C.R. Evid. 803(8) (2007). But, SBI reports "that are not admissible under Exception (8)[, the public records exception,] are not admissible as business records under Exception (6). As a result, we must determine whether these reports are admissible under Rule 803(8) before we can decide whether they are admissible as business records." *State v. Forte*, 360 N.C. 427, 436, 629 S.E.2d 137, 144 (2006) (citation omitted).

The exception to the hearsay rule under Rule 803(8) does not apply where "the sources of information or other circumstances indicate lack of trustworthiness." N.C.R. Evid. 803(8) (2007). "[G]uarantees of trustworthiness are based on a consideration of the totality of the circumstances but only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Roper*, 328 N.C. at 360, 402 S.E.2d at 613 (citation and internal quotations omitted).

Here, Special Agent Eason took the statement of a witness several hours after the shooting while sitting in Eason's state issued vehicle outside the Roseboro Police Department. We cannot say the circumstances surrounding the witness's statement so minimized the risk of inaccuracy and imparted a sense of trustworthiness as to allow Special Agent Eason to testify to the witness's statement as evidence of the truth of the matter asserted. *See* N.C.R. Evid. 803(6) (2007). Accordingly, defendant's assignment of error is overruled.

III

[3] Last, defendant argues the trial court erred by denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury under an accomplice theory for insufficient evidence. Defendant argues the State failed to present sufficient evidence that defendant joined with one or more people in a common scheme or plan to commit a crime.

"When a defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (citations and quotations omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Harris*, 361 N.C. 400, 402, 646 S.E.2d 526, 528 (2007) (citation omitted). "As to whether substantial evidence exists, the question for the trial court is not one of weight,

but of the sufficiency of the evidence." *Id.* (citation omitted). To review the sufficiency of the evidence, "we view the evidence in the light most favorable to the State, resolving all conflicts in the evidence in favor of the State and giving it the benefit of all reasonable inferences. Moreover, circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Tirado*, 358 N.C. 551, 582, 599 S.E.2d 515, 536 (2004) (citations and quotations omitted).

Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury. The trial court instructed the jury that "[i]f two or more persons join in a common purpose to commit a crime . . . each of them, if actually or constructively present, is guilty of that crime if the other person commits the crime." Our North Carolina Supreme Court has reasoned that

> where a defendant and a co-defendant shared a criminal intent and the co-defendant who actually committed the crime knew of the shared intent, if the defendant was in a position to aid or encourage the co-defendant when the co-defendant committed the offense, the defendant was constructively present and acting in concert with the co-defendant.

*Id.* at 582, 599 S.E.2d at 536 (citation omitted).

The evidence presented at trial tended to show that on the morning of 27 February 2006, Bruce Owens and defendant were riding with defendant in his car when Bruce Owens called Elerico Howard. Owens informed Howard that the brother of a man that allegedly robbed Howard was in the vicinity. Shortly thereafter, Howard met Owens and defendant at defendant's home, and all three men left in Howard's white SUV hoping to find this man. At some point, Howard received a tip that the brother of the alleged robber, Kurtis Johnson, was at a local Head Start child care facility. Defendant and his two companions drove toward the Head Start to confront Johnson. Defendant and his companions parked two blocks from the Head Start, and Owens and Howard walked the rest of the way from the SUV to the Head Start. When Owens saw Kurtis Johnson pull away in a white car, Owens pulled a handgun from his waistband and fired until he emptied the gun clip.

Unable to hit the car, Owens and Howard ran back to the vehicle, climbed in through the hatchback, and sat in the back seat. Owens

left his firearm there and took Howard's. Owens testified that he "wanted to have the gun and [he] was going to try to scare the victim up if [they] caught up with him."

Defendant, Owens, and Howard then chased the white car into a parking lot at Tony's Amoco and Grill. Owens got out of the SUV and ran to the passenger side of the white car. The white car attempted to drive off, and Owens fired through the back window striking Kurtis Johnson in the face. Owens returned to the SUV; and defendant, Howard and Owens left the scene.

We hold there is sufficient evidence for a jury to conclude that defendant and Bruce Owens shared an intent to use a gun to "scare the victim up." Because the evidence supports the theory that defendant aided by driving the SUV that chased Kurtis Johnson into the Amoco parking lot, where Owens shot Johnson, defendant was present and acting in concert with Owens. *See Tirado*, 358 N.C. at 582, 559 S.E.2d at 536. Accordingly, defendant's assignment of error is overruled.

No error.

Judges McCULLOUGH and STEPHENS concur.