STATE OF NORTH CAROLINA v. JEFFREY FENNELL

No. 888SC1177

(Filed 15 August 1989)

1. **Constitutional Law § 17; Weapons and Firearms § 2— right to bear arms—no right to carry sawed-off shotgun**

    A charge against defendant for possessing a sawed-off shotgun in violation of N.C.G.S. § 14-288.8 did not violate defendant's right to bear arms under the Second Amendment of the United States Constitution or Article I, Section 30 of the North Carolina Constitution, since the Second Amendment does not protect defendant's right to carry a sawed-off shotgun but instead guarantees the right to bear arms only in connection with a "well regulated militia"; the statute does not completely ban a class of weapons protected by the N.C. Constitution, but permits possession of shotguns with the exception of short-barreled ones; this regulation is reasonable and bears a fair relation to the preservation of the public peace and safety; the State can regulate more than just the time, place, and manner in which a firearm is borne; and the State can regulate the length of a particular firearm as long as there is a reasonable purpose for doing so.

2. **Weapons and Firearms § 1— possessing sawed-off shotgun— operability not an element**

    Operability is not an element of the crime to be proved by the State in a prosecution for possession of a "weapon of mass

death and destruction" in violation of N.C.G.S. § 14-288.8; rather, defendant bears the initial burden of producing evidence of inoperability, and simply raising the issue of potential inoperability is not sufficient to shift the burden of proof to the State.

**3. Weapons and Firearms § 2 — possession of disassembled sawed-off shotgun — weapon of mass death and destruction**

A disassembled sawed-off shotgun qualifies as a weapon of mass death and destruction under N.C.G.S. § 14-288.8, and defendant was therefore properly tried under that statute rather than under N.C.G.S. § 14-288.8(c)(4) which merely defines what weapons qualify as weapons of mass death and destruction.

APPEAL by defendant from *Samuel T. Currin, Judge.* Judgment entered 10 June 1988 in Superior Court, WAYNE County. Heard in the Court of Appeals 11 May 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Donald R. Teeter, for the State.*

*Barnes, Braswell, Haithcock & Warren, P.A., by R. Gene Braswell and Glenn A. Barfield, for defendant-appellant.*

BECTON, Judge.

On 10 June 1988, defendant, Jeffrey Fennell, was convicted of possession of a "weapon of mass death and destruction," in violation of N.C. Gen. Stat. Sec. 14-288.8, and was sentenced to five years imprisonment. Fennell appeals, contending that the trial judge erred by: (1) denying his motion to dismiss on the ground that the charges abridged his constitutional right to bear arms; (2) denying his motion to dismiss because the State failed to show that the firearm was operable as a weapon of mass death and destruction; and (3) failing to instruct the jury that a weapon which will not fire cannot be a weapon of mass death and destruction. We find no error.

I

The State's evidence tended to show that on 3 March 1988, three Goldsboro police officers were dispatched to a community recreation center to investigate a report of a man carrying a "sawed-off shotgun." Two of the officers spotted Fennell, who fit the de-

scription of the suspect, outside the center. When Fennell saw them, he ran toward the front door of the center, pulling an object that "resembled a rifle or a shotgun from his pants." Moments later, the officers found Fennell inside the center, without any weapon and without the jacket he had been wearing when first spotted. After a brief search, the jacket was found behind a bench in the center with a disassembled sawed-off shotgun in its pocket. At this point, Fennell tried to run but was apprehended by the officers.

Fennell put on no evidence.

Fennell appeals from his conviction of possession of a weapon of mass death and destruction, raising seven assignments of error but only offering authority as to three.

## II

[1]   The first of Fennell's assignments of error concerns the constitutionality of N.C. Gen. Stat. Sec. 14-288.8 (1986). The statute provides:

> (a) Except as otherwise provided in this section, it is unlawful for any person to manufacture, assemble, possess, store, transport, sell, offer to sell, purchase, offer to purchase, deliver or give to another, or acquire any weapon of mass death and destruction.
>
>     . . .
>
> (c) The term "weapon of mass death and destruction" includes
>     . . .
>
>     (3) . . . [A]ny shotgun with a barrel or barrels of less than 18 inches in length or an overall length of less than 26 inches. . . .
>
>     (4) Any combination of parts either designed or intended for use in converting any device into any weapon described above and from which a weapon of mass death and destruction may readily be assembled. . . .

Fennell contends that the statute is an overly-broad restriction of his constitutional right to bear arms under both the Second Amendment to the Constitution of the United States and Article I, Section 30 of the North Carolina Constitution. Each declares that "[a] well regulated [m]ilitia[,] being necessary to the security

of a free State, the right of the people to keep and bear [a]rms[,] shall not be infringed. . . ." N.C. Const. art. I, sec. 30; U.S. Const. amend. II.

Fennell concedes that the Second Amendment does not protect his right to carry a sawed-off shotgun. Indeed, it is generally understood that the Second Amendment guarantees the right to bear arms only in connection with a "well regulated militia." *See generally* 37 A.L.R. Fed. 696 (1978) (Supp. 1988). In *United States v. Miller*, for example, the Supreme Court rejected the argument that the National Firearms Act of 1934, which outlawed the possession or use of a sawed-off shotgun, was unconstitutional, stating:

> [i]n the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

307 U.S. 174, 178, 83 L.Ed. 1206, 1209 (1939).

It is true, however, that the North Carolina Constitution has been interpreted to guarantee a broader right to individuals to keep and bear arms. "North Carolina decisions have interpreted our Constitution as guaranteeing the right to bear arms to the people in a collective sense — similar to the concept of a militia — and also to individuals." *State v. Dawson*, 272 N.C. 535, 546, 159 S.E.2d 1, 9 (1968). Yet, as the Supreme Court of this state also noted, "These decisions have . . . consistently pointed out that the right of individuals to bear arms is not absolute, but is subject to regulation." *Id*. The regulation must be " 'reasonable and not prohibitive, and must bear a fair relation to the preservation of the public peace and safety.' " *Id*. at 547, 158 S.E.2d at 10 (citation omitted).

Fennell argues that the statute in question is an absolute prohibition on short-barreled shotguns and, therefore, is unconstitutional. He adds that the State may regulate firearms only as to time, place or manner. These contentions are without merit.

First, the statute does not completely ban a class of weapons protected by the Constitution. Rather, it permits possession of shotguns, with the exception of those which have been tampered with so as to shorten the barrel. "[A] sawed-off shotgun seems a most plausible subject of regulation as it may be readily concealed

and is especially dangerous because of the wide and nearly indiscriminate scattering of its shot." *Commonwealth v. Davis*, 369 Mass. 886, 889-90, 343 N.E.2d 847, 850 (1976). *Accord, State v. Astore*, 258 So.2d 33 (Fla. Dist. Ct. App. 1972); *State v. Hamlin*, 497 So.2d 1369 (La. Ct. App. 1986). Accordingly, we hold that this regulation is reasonable and bears a fair relation to the preservation of the public peace and safety.

Second, the State can regulate more than just the time, place and manner in which a firearm is borne. As the court stated in *State v. Kerner*,

> [i]t is . . . a reasonable regulation . . . to require that a pistol shall not be under a certain length, which, if reasonable, will prevent the use of pistols of small size, which are not borne as arms, but which are easily and ordinarily carried concealed. To exclude all pistols, however, is not a regulation, but a prohibition, of arms, which come under the designation of "arms" which the people are entitled to bear.

181 N.C. 574, 578, 107 S.E. 222, 225 (1921). Thus, the State can regulate the length of a particular firearm as long as there is a reasonable purpose for doing so. We are not convinced by Fennell's argument that such a restriction leads us down the "slippery slope" and gives the legislature full license to restrict any and all firearms possessed by individuals. We overrule this assignment of error.

### III

In his last two assignments of error, Fennell contests the sufficiency of the State's evidence. Fennell argues that: (1) the statute requires that the firearm be operable; (2) the State had the burden to prove operability; and (3) the State charged Fennell under the wrong section of the statute.

A.  Inoperability of a Weapon of Mass Death and Destruction is an Affirmative Defense

[2]  "The term 'weapon of mass death and destruction' does not include any device . . . which the Secretary of the Treasury finds is not likely to be used as a weapon, [or] is an antique. . . ." N.C. Gen. Stat. Sec. 14-288.8. Thus, devices listed in the statute lose their status as weapons of mass death and destruction once they

are found to be totally inoperable and incapable of being readily made operable.

We must determine which party has the burden of proof concerning the issue of operability. We hold that operability is not an element of the crime to be proven by the State. It is, rather, an affirmative defense. Though this issue is one of first impression in this state, our holding is consistent with *State v. Baldwin*, 34 N.C. App. 307, 237 S.E.2d 881 (1977). In *Baldwin*, the defendant was charged with violating Section 14-415.1 (1986), which makes it unlawful for anyone convicted of a crime to possess a sawed-off shotgun. There, we held that when the defendant fails to produce any evidence of *inoperability*, the State does not have to submit evidence of *operability*. *Id.* at 309, 237 S.E.2d at 882. Given that the statute in question in *Baldwin* and the one at issue here are materially the same, it logically follows that the burden of proof regarding inoperability of a weapon of mass death and destruction falls on the defendant.

Moreover, other jurisdictions considering the question have held that the State does not have to prove operability. Instead, they have held that the defendant bears the initial burden of producing evidence of inoperability. *State v. Rosthenhausler*, 147 Ariz. 486, 711 P.2d 625 (1985); *People v. Gaines*, 103 Cal. App. 3d 89, 162 Cal. Rptr. 827 (1980), *overruled on other grounds by People v. Nelums*, 31 Cal. App. 3d 355, 82 Cal. Rptr. 515 (1982); *People v. Mason*, 96 Mich. App. 47, 292 N.W.2d 480 (1980). Thus, in this case, the State would have had to prove operability only if the defendant had offered evidence of the weapon's inoperability.

B. The Evidence of Inoperability was Not Sufficient to Shift the Burden of Proving Operability to the State

Fennell offered no evidence that the weapon was inoperable. He merely raised the possibility that the weapon was incapable of being fired. Significantly, no witness opined that the weapon was inoperable. Instead, the only opinion concerning operability was that offered by one of the police officers that the weapon was operable. We hold that simply raising the issue of potential inoperability is not sufficient to shift the burden of proof to the State.

C. A Disassembled Sawed-off Shotgun Qualifies as a Weapon of Mass Death and Destruction

[3] Fennell was charged under the correct statute. He argues that he should have been charged, not under Section 14-288.8, but under 14-288.8(c)(4). Subsection (c) merely defines what weapons qualify as weapons of mass death and destruction. Included in this list are sawed-off shotguns and, under subsection (c)(4), any combination of parts that may be readily assembled into weapons listed in the other subsections. The fact that the weapon had been disassembled by the time it was found by the officers does not lessen its quality as a weapon of mass death and destruction. This assignment of error is without merit.

IV

Fennell's four remaining assignments of error are not discussed in the brief. Thus, we deem them abandoned. N.C.R. App. P. 28(a) (1989).

V

For the reasons stated, we hold that defendant Jeffrey Fennell received a fair trial, free from error.

No error.

Judges PHILLIPS and LEWIS concur.