STATE OF NORTH CAROLINA v. ANTOINE DEPRAY JACKSON

No. 427PA00

(Filed 8 June 2001)

**Firearms and Other Weapons— possession by felon—operability**

The trial court did not err in a prosecution for possession of a firearm by a felon by denying defendant's requested instruction that inoperability constituted an affirmative defense. Although N.C.G.S. § 14-415.1 addresses the size of handguns or firearms which fall under its purview, it does not address whether the handgun or firearm has to be operational at the time of the charge. Cases relied upon by the Court of Appeals in holding to the contrary are not determinative because they involved other

statutes or dicta; however, *In re Crowley*, 120 N.C. App. 274, involved a similar issue, similar statute, and similar analysis. The focus of the words "purchase, own, possess, or have in custody, care, or control" in N.C.G.S. § 14-415.1 is on the felon's access to the firearm and not the firearm's operability at any given point, and this focus is consistent with the logical objective of preventing a show of force by felons, real or apparent. Finally, it is illogical to conclude that the legislature intended that a felon in possession of an unloaded firearm was not in violation of the prohibition of possession of firearms by felons.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 139 N.C. App. 721, 535 S.E.2d 48 (2000), finding no error in part and ordering a new trial in part for judgments entered 29 October 1998 by Bridges, J., in Superior Court, Mecklenburg County. Heard in the Supreme Court 14 March 2001.

*Roy A. Cooper, Attorney General, by Robert C. Montgomery, Assistant Attorney General, for the State-appellant.*

*Isabel Scott Day, Public Defender, by Julie Ramseur Lewis, Assistant Public Defender, for defendant-appellee.*

LAKE, Chief Justice.

Defendant was arrested on 24 March 1998 by Mecklenburg County police on charges of carrying a concealed weapon, possession of a firearm by a felon, and resisting a public officer. He was tried at the 28 October 1998 Criminal Session of Superior Court, Mecklenburg County, and was found guilty of all charges. The trial court sentenced defendant to an active term of imprisonment of fifteen to eighteen months for the consolidated possession and concealed weapon charges and to a suspended sentence of forty-five days for the resisting a public officer charge and a second-degree trespassing charge, to which defendant had previously pled guilty. From these judgments and convictions, defendant gave timely notice of appeal.

On appeal, the Court of Appeals found no error in defendant's conviction of resisting a public officer and in the trial court's admission of evidence regarding defendant's prior voluntary manslaughter conviction, used to establish that defendant was a felon for the purposes of the possession of a firearm charge. *State v. Jackson*, 139 N.C. App. 721, 732-33, 535 S.E.2d 48, 55 (2000). However, with regard

to defendant's conviction of the firearm possession charge, the Court of Appeals concluded that inoperability of a firearm is an affirmative defense, and that defendant was therefore entitled to a jury instruction in that regard, and reversed and remanded for a new trial. *Id.* at 728, 535 S.E.2d at 52.

This Court granted the State's petition for discretionary review on the issue of whether inoperability of a firearm is in fact an affirmative defense to the charge of possession of a firearm by a felon. After careful review, we hold that it is not, and therefore, we reverse the decision of the Court of Appeals as to that issue.

The State's evidence at trial showed that at approximately 7:10 a.m. on 24 March 1998, Officers Jeffrey Troyer and John Robert Garrett of the Charlotte-Mecklenburg Police Department were dispatched to a public housing area to investigate a complaint that an individual was waving a gun in the air. Upon arriving at the scene, the officers approached a man fitting the description given by the complainant. Officer Garrett asked the suspect, later identified as defendant, if they could talk with him and informed him that someone had called in about a guy waving a gun around. Defendant responded, "Oh, I know who you mean; I'll show you where he is." Officer Garrett asked defendant if he could search him first, and defendant agreed. During the search, Officer Troyer retrieved a loaded chrome-plated handgun, which defendant had tucked in the waistband of his pants. The officers were in the process of arresting defendant for carrying a concealed weapon when he broke free and ran. The officers apprehended and arrested defendant after a brief chase.

It was later confirmed that defendant had previously been banned from the public housing premises after pleading guilty to a charge of second-degree trespassing.

At trial, defendant called Todd Nordoff, a firearms and toolmark examiner with the Charlotte-Mecklenburg Crime Laboratory. Nordoff testified that he examined the handgun identified as having been recovered from defendant, and that the gun lacked an internal pin and spring. Nordoff responded affirmatively to questions about whether the missing spring played an "integral" role in the chain reaction permitting the gun to fire and whether without the spring the gun "was not normally operable." On cross-examination, however, Nordoff testified that the gun could be fired by removing the grip and manually tripping the internal mechanism. He also stated that the gun

could possibly be fired by hitting it hard on the top of the weapon, but that he had not attempted to do so.

Relying on Nordoff's testimony, defendant moved to dismiss the possession of a firearm charge, based on the assertion that there was insufficient evidence that the gun in question was operable. The trial court denied defendant's motion, and defendant further moved for a jury instruction that inoperability constituted an affirmative defense to possession of a firearm. The trial court denied defendant's request for instruction, and after deliberation, the jury found defendant guilty of all charges.

The only issue before this Court is whether "operability" is an essential element of a "handgun or other firearm" such that "inoperability" is an affirmative defense to a charge of "possession of a firearm by a felon," as such offense is defined by N.C.G.S. § 14-415.1. Pursuant to that section,

(a) It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches, or any weapon of mass death and destruction as defined in G.S. 14-288.8(c).

Every person violating the provisions of this section shall be punished as a Class G felon.

Nothing in this subsection would prohibit the right of any person to have possession of a firearm within his own home or on his lawful place of business.

N.C.G.S. § 14-415.1(a) (1999).

Although the statute addresses the size of handguns or firearms which fall under its purview, it does not address whether the handgun or firearm has to be operational at the time of the charge, or whether it suffices that the handgun or firearm was designed to be operational at some point in the past or could be made to be operational at some point in the future.

One of the cases on which the Court of Appeals relied in reaching its interpretation that inoperability is an affirmative defense to the charge of possession of a firearm by a felon is *State v. Fennell*, 95 N.C. App. 140, 382 S.E.2d 231 (1989). In *Fennell*, the defendant was in

possession of a disassembled sawed-off shotgun and was convicted of possession of a "weapon of mass death and destruction," in violation of N.C.G.S. § 14-288.8. *Id.* at 141, 382 S.E.2d at 232. One of the issues raised on appeal in *Fennell* was in fact whether the jury should have been instructed "that a weapon which will not fire cannot be a weapon of mass death and destruction." *Id.* However, although the issue raised in *Fennell* is similar to the issue raised in the instant case, the areas of law and the statutory construction of the sections in question are dissimilar.

Unlike section 14-415.1, addressing possession of a firearm by a felon, section 14-288.8, addressing possession of weapons of mass death and destruction by anyone, does not require statutory interpretation to determine that "inoperability" alone is not a defense. Section 14-288.8 specifically defines "weapon of mass death and destruction" to include "[a]ny combination of parts either designed or intended for use in converting any device into any weapon [of mass death and destruction] and from which a weapon of mass death and destruction may readily be assembled." N.C.G.S. § 14-288.8(c)(4) (1999). Therefore, a weapon of mass death and destruction clearly does not have to be "operable" at the time of arrest, as the pieces themselves can constitute a "weapon of mass death and destruction." Although the Court of Appeals stated in *Fennell* that inoperability is an affirmative defense to a charge under N.C.G.S. § 14-288.8, we read this to mean inoperability is a defense to the extent that the defendant can prove the pieces seized were not "designed or intended for use in converting any device" into a weapon of mass death and destruction.

Additionally, the fact that the legislature defined "weapon" in section 14-288.8 of article 36A as including "parts either designed or intended for use in converting any device into any weapon" is not indicative that the legislature would have defined "firearm" as including pieces of a firearm in article 54A had it meant to do so. The nature of some weapons of mass death and destruction, such as bombs, make them conducive to being kept in parts, whereas a firearm clearly has the appearance of a firearm, whether it is missing an internal mechanism or not, and indeed its use as a threatening weapon can rely solely on its appearance as a firearm.

In reaching its determination in *Fennell*, the Court of Appeals referenced its holding in *State v. Baldwin*, 34 N.C. App. 307, 237 S.E.2d 881 (1977), and stated that the holdings in *Fennell* and *Baldwin* were consistent. In *Baldwin*, the felon defendant was stopped by police

and was in possession of a twelve-gauge sawed-off shotgun. The only issue raised on appeal was whether the State was required to submit evidence that the gun which the defendant was charged with possessing was operable in order to prove, under N.C.G.S. § 14-415.1, that the felon was in possession of a "firearm." *Id.* at 308, 237 S.E.2d at 881. The defendant never presented any evidence that the shotgun was inoperable, nor did he assert that inoperability was an affirmative defense. Therefore, the actual holding in *Baldwin*, that the State did not have to submit evidence of operability, was not on point with the question regarding inoperability raised in *Fennell*, and despite defendant's assertions to the contrary, it also is not on point with the question now before this Court.

The court in *Baldwin* did discuss, in dicta, cases from other jurisdictions addressing whether inoperability is an affirmative defense. However, "[i]t is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision." *Moose v. Board of Comm'rs of Alexander County*, 172 N.C. 419, 433, 90 S.E. 441, 448-49 (1916). Therefore, dicta in *Baldwin* regarding inoperability as an affirmative defense to N.C.G.S. § 14-415.1 is not determinative of the issue before us.

Based on the foregoing, the holdings in *Fennell* and *Baldwin* are not determinative to the issue in the case at hand. However, to the extent that language in *Fennell* or *Baldwin* conflicts with our holding in the instant case, it is disavowed.

Another case referenced by the Court of Appeals in reaching its determination in the case at bar is *In re Cowley*, 120 N.C. App. 274, 461 S.E.2d 804 (1995). Although the court differentiated its holding in *Cowley*, we find the issue raised in *Cowley*, the statute from which the issue was raised, and the analysis necessary to reach a determination to be similar to the instant case.

In *Cowley*, the defendant was in possession of a handgun on school property and was charged with a violation of N.C.G.S. § 14-269.2, which makes it a felony to carry a firearm on educational property. *Id.* at 274-75, 461 S.E.2d at 805. The question raised on appeal was specifically whether inoperability of the handgun was an affirmative defense. The Court of Appeals relied on its interpretation of the legislative intent behind the statute in holding that inoper-

ability was not an affirmative defense because the purpose of N.C.G.S. § 14-269.2 was "to deter students and others from bringing any type of gun onto school grounds" due to "the increased necessity for safety in our schools." *Id.* at 276, 461 S.E.2d at 806.

Both *Cowley* and the instant case raise the question of whether inoperability is an affirmative defense to a charge pursuant to a statute which addresses a specific issue of public concern. Just as there is heightened risk and public concern associated with firearms on educational property, which the legislature addressed through N.C.G.S. § 14-269.2, there is also heightened risk and public concern associated with convicted felons possessing firearms, which the legislature addressed through N.C.G.S. § 14-415.1. Both are exceptional situations, which have been addressed through dedicated statutory law. The statutory law in each case does not specifically address operability or inoperability of weapons and requires judicial interpretation of the legislative objective and intent which resulted in the initiation of the legislation.

"When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978). If a statute is unclear or ambiguous, however, courts must resort to statutory construction to determine legislative will and the evil the legislature intended the statute to suppress. *Id.* at 239, 244 S.E.2d at 389.

In determining whether the legislature intended inoperability of the firearm to be an affirmative defense to N.C.G.S. § 14-415.1, we find the breadth of acts which the legislature included as violations under the statute to be instructive. The statute provides that "[i]t shall be unlawful for any person who has been convicted of a felony to *purchase, own, possess, or have in his custody, care, or control* any handgun or other firearm." N.C.G.S. § 14-415.1(a) (emphasis added). The focus of the words "purchase, own, possess, or have in custody, care, or control" is on the felon's access to the firearm and not the firearm's operability at any given point in time.

Additionally, the interpretation that operability is not a necessary component of a "firearm" is also consistent with the intuitively logical objective of the statute to prevent a show of force by felons,

either real or apparent. An unloaded or inoperable firearm has " 'the same effect on victims and observers when pointed or displayed, tending to intimidate, and also increase the risk of violence by others who may respond to the perceived danger represented' " as a presumably operational gun. *United States v. Hunter*, 101 F.3d 82, 86 (9th Cir. 1996) (quoting *United States v. Martinez*, 912 F.2d 419, 421 (10th Cir. 1990)), *cert. denied*, 520 U.S. 1133, 137 L. Ed. 2d 360, *and cert. denied*, 520 U.S. 1161, 137 L. Ed. 2d 505 (1997). "[T]he display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue." *McLaughlin v. United States*, 476 U.S. 16, 17-18, 90 L. Ed. 2d 15, 18 (1986) (footnote omitted).

Defendant contends this Court should rely on definitions of "firearm" and "handgun" in N.C.G.S. § 14-409.39, the definition section in article 53B, Firearm Regulation, in reaching its determination. That section defines "firearm" as "[a] handgun, shotgun, or rifle which expels a projectile by action of an explosion," and defendant argues that if the firearm in question cannot expel a projectile at the time of possession, it does not fit under the statutory definition of "firearm." N.C.G.S. § 14-409.39(2) (1999). However, defendant's rationalization could also be applied to an unloaded firearm. We do not agree with the illogical conclusion that our legislature intended that a felon who is in possession of an unloaded firearm is not in violation of the prohibition of possession of firearms by felons. " 'It begs reason to assume that our Legislature intended to allow convicted felons to possess firearms so long as they are unloaded, or so long as they are temporarily in disrepair, or so long as they are temporarily disassembled, or so long as for any other reason they are not immediately operable.' " *State v. Padilla*, 95 Wash. App. 531, 535, 978 P.2d 1113, 1115 (quoting *State v. Anderson*, 94 Wash. App. 151, 162, 971 P.2d 585, 591 (1999), *rev'd on other grounds*, 141 Wash. 2d 357, 5 P.3d 1247 (2000)), *rev. denied*, 139 Wash. 2d 1003, 989 P.2d 1142 (1999).

Although the question of whether inoperability of a firearm is an affirmative defense under N.C.G.S. § 14-415.1 is one of first impression in this state, many other states have reached the question with varying degrees of decisiveness. Some state courts have specifically held that inoperability is immaterial. *See People v. Hester*, 271 Ill. App. 3d 954, 649 N.E.2d 1351 (1995) (finding no error in trial court's instruction to the jury that the weapon's operability is immaterial). Some courts have applied a more fact-specific test requiring the State to prove, through direct or circumstantial evidence, that the firearm

is operational or that it may readily be made operational. *See Williams v. Commonwealth*, 33 Va. App. 796, 807, 537 S.E.2d 21, 26 (2000). Other states have the advantage of having statues which have clear language stating that a "firearm" under the statute can be loaded, unloaded, operable or inoperable. *See State v. Middleton*, 143 N.J. Super. 18, 22, 362 A.2d 602, 603 (1976) (possession statute specifically states "any firearm, whether or not capable of being discharged"), *aff'd*, 75 N.J. 47, 379 A.2d 453 (1977); *see also Fortt v. State*, 767 A.2d 799, 803 (2001) (citing Delaware statute which defines firearm as including operable, inoperable, loaded or unloaded); *State v. Webster*, 94 Haw. 241, 243, 11 P.3d 466, 468 (2000) (citing Hawaii statute which defines firearm as including operable, inoperable, loaded or unloaded); *Hughes v. State*, 12 P.3d 948, 950 (2000) (citing Nevada statute which defines firearm as including operable, inoperable, loaded or unloaded).

It is also noteworthy that federal circuit courts addressing the question of inoperability of a firearm as an affirmative defense have reached the conclusion that it is not a defense. *See United States v. Adams*, 137 F.3d 1298, 1300 (11th Cir. 1998) (holding nothing in the statutory language of 18 U.S.C. §§ 922(g)(1) or 921(a)(3) or legislative history indicates that an unlawfully possessed firearm must be operable for purposes of the statute); *United States v. Maddix*, 96 F.3d 311, 316 (8th Cir. 1996) (holding 18 U.S.C. § 921(a)(3) does not require a firearm to be operable); *United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir. 1994) (stating "the law is clear that weapon does not need to be operable to be a firearm"), *cert. denied*, 513 U.S. 1182, 130 L. Ed. 2d 1125 (1995); *United States v. Willis*, 992 F.2d 489, 491 (4th Cir.) (finding no merit to the claim that an inoperable firearm is not a firearm under 18 U.S.C. § 921(a)(3)), *cert. denied*, 510 U.S. 857, 126 L. Ed. 2d 127 (1993); *United States v. Morris*, 904 F.2d 518, 519 (9th Cir. 1990) (stating " '[t]he statute imposes no requirement that the gun be loaded or operable' ") (quoting *United States v. Gonzalez*, 800 F.2d 895, 899 (9th Cir. 1986)); *United States v. Perez*, 897 F.2d 751, 754 (5th Cir.) (stating "[a]n inoperable firearm is nonetheless a firearm"), *cert. denied*, 498 U.S. 865, 112 L. Ed. 2d 141 (1990).

Based on the foregoing, we hold that inoperability of a "handgun or other firearm" is not an affirmative defense to a charge of possession of a firearm by a felon under N.C.G.S. § 14-415.1. We therefore reverse the Court of Appeals' holding with regard to that issue.

REVERSED.

Justice EDMUNDS did not participate in the consideration or decision of this case.