STATE v. BLACKWELL

[163 N.C. App. 12 (2004)]

———

STATE OF NORTH CAROLINA v. GEORGE WILLIAM BLACKWELL, SR.

No. COA03-199

(Filed 17 February 2004)

## 1. Homicide— voluntary manslaughter—evidence sufficient

There was sufficient evidence of voluntary manslaughter, despite defendant's contention that the State failed to present sufficient evidence that the shooting was not in self-defense.

## 2. Evidence— hearsay—information from website

Testimony from a firearms expert that a sawed-off shotgun was manufactured after 1905, based on information from a website, was not inadmissible hearsay. Moreover, its admission was not plain error because the antique status of a sawed-off shotgun is an affirmative defense, and the initial burden of presenting evidence on the antiquity of the shotgun was on defendant. The only evidence presented by defendant was merely that the shotgun was old.

**3. Firearms and Other Weapons— variance—brand of shotgun—not fatal**

There was not a fatal variance between the indictment and the proof concerning a weapon of mass destruction where defendant was indicted for possession of a Stevens shotgun and the evidence showed that he was in possession of an Eastern Arms shotgun, which was a brand of Stevens Arms. Moreover, any person of common understanding would have understood that defendant was charged with possessing the sawed-off shotgun that he used to shoot the victim.

**4. Homicide— self-defense—pattern instruction misread— not plain error**

There was no plain error in an instruction on self-defense where the court misread the pattern jury instruction and repeated an instruction on whether the victim had a weapon rather than giving the instruction on the victim's reputation. Defendant did not argue that the victim's reputation should have been considered.

Appeal by defendant from judgment entered 15 August 2002 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 November 2003.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Elizabeth F. Parsons, for the State.*

*Leslie C. Rawls for defendant-appellant.*

HUNTER, Judge.

George William Blackwell, Sr. ("defendant") appeals from a judgment dated 15 August 2002 entered consistent with jury verdicts finding him guilty of voluntary manslaughter and possession of a weapon of mass destruction. Defendant was sentenced to a minimum term of imprisonment of seventy-two months with a corresponding maximum term of ninety-six months. We conclude there was no error.

The State's evidence presented at trial beginning on 12 August 2002 tends to show the following. On 5 November 1999, David Ray Baker ("the victim") returned home from visiting his aunt shortly after 11:00 p.m. The victim was still angry from an earlier altercation with his cousin and called his father, after which he went outside. The victim's father returned the call and the victim's wife went outside to

tell the victim. However, she did not find him and shortly after a gunshot was heard.

Defendant lived in a rooming house next door to the victim. Defendant's house-mate heard defendant leave the house at around 11:00 p.m. Subsequently, he heard a man next door standing outside cursing. Approximately fifteen minutes later, defendant returned and his house-mate heard the man next door state in an angry tone, "can't you drive?" Defendant was heard walking back to the rooming house, but was then engaged in a heated conversation, during which defendant was distinctly heard to say, "back off." Defendant's house-mate heard a gunshot, and defendant returned to the house and called emergency services.

Patricia Amos ("Amos"), a crime scene investigator for the Charlotte-Mecklenburg Police Department, testified that she arrived at the scene of the shooting at about 2:50 a.m. She observed the body of the victim lying in his own backyard with wounds to the left side of his neck. The victim was wearing a long sleeved shirt, blue jeans and tennis shoes. Amos searched the victim's clothing and found nothing. A four-foot high chain link fence separated the victim's residence from defendant's residence. By Amos' measurement, the waist of the victim was fourteen and a half feet from the chain link fence. The victim was lying on his back with his feet pointing toward the fence. Furthermore, there was a security light located at the base of the fence that was turned on. Amos did not find a weapon on the victim's body or anywhere in the victim's backyard. The only thing resembling a weapon that was found was a dust-covered toy pistol, located in an abandoned car thirty-feet away from the victim's body. Amos also examined defendant's residence and defendant gave consent for a search of his room. A 12-gauge Eastern Arms shotgun with a sawed-off barrel was laying on the bed and a spent shotgun shell was found on the bedside table.

Todd Nordhoff ("Nordhoff") testified that he was a firearm and toolmark examiner with the Charlotte-Mecklenburg crime lab. Defendant stipulated, through counsel, that Nordhoff was an expert in forensic firearms identification. He testified that the shotgun recovered from defendant's room had a barrel length of fifteen and a half inches and an overall length of twenty-four inches. Nordhoff stated that to be legal in North Carolina a shotgun was required to have a barrel length of eighteen inches and an overall length of twenty-six inches. Nordhoff identified the spent shotgun shell found in defendant's room as having been fired from the shotgun.

STATE v. BLACKWELL

[163 N.C. App. 12 (2004)]

On recall, Nordhoff testified that the shotgun was a center fire weapon. On cross-examination, Nordhoff stated that the shotgun was manufactured sometime after 1905. Nordhoff was asked how he knew that and Nordhoff replied that he had done research on the internet at a website called "Gable Guns, dot, com." Although Nordhoff did not know the background of the website's proprietor, the website apparently specialized in pre-1898 antique firearms. According to this website, "Eastern Arms Company" was a brand name used by Jay Stevens Arms between the years 1910 and 1915. An autopsy showed the victim's major wound was a shotgun wound to the chest and neck resulting in numerous internal injuries. Eight shotgun pellets were found in the victim's body and a ninth had pierced the back of the victim and exited his body.

Defendant testified on his own behalf. He stated that on the night of the shooting he left his residence to purchase cigarettes. Upon returning, he saw the victim accosting a man in a pickup truck. The victim then threatened defendant and began approaching him saying, "I'll just kill you." The victim climbed a fence back into his own yard and began walking toward defendant's residence. Defendant returned to his room and retrieved his shotgun, which had a sawed-off barrel and returned to the deck of his house. As the victim was climbing the fence into defendant's backyard, defendant walked toward the victim and warned him to get off the fence. Defendant did not see a weapon in the victim's hands. He then warned the victim that he had two choices, "you can live or die." The victim got off the fence and began to walk away, but suddenly turned and defendant saw the victim's hands go into his pockets as the victim yelled, "f— you[,] I'm gonna kill you." Defendant fired his shotgun killing the victim.

Defendant also presented evidence that the shotgun had belonged to his father to whom it was given by an eighty-three year old lady whose father had given it to her. The first time defendant had tried to fire the gun after it was given to him, the barrel of the shotgun "banana-peeled like a Bugs Bunny cartoon." As a result, defendant had sawed off part of the barrel.

Defendant was indicted for manslaughter and felonious possession of a weapon of mass destruction, "to wit: a Stevens 12 gauge single-shot shotgun that was modified so that it had a barrel length of less than eighteen (18) inches in length and a total length of less than twenty-six (26) inches." Defendant's motions to dismiss were denied both at the close of the State's evidence and at the close of all the evi-

dence. As part of its jury instruction on the defense of self-defense the trial court stated:

> And, second, the circumstances as they appeared to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary firmness.

> It is for you, the jury, to determine the reasonableness of the defendant's belief from the circumstances as they appeared to him at the time. In making this determination you should consider the circumstances as you find them to have existed from the evidence, including the size, age and strength of the defendant as compared to the victim, the fierceness of the assault, if any, upon the defendant, whether or not the victim had a weapon in his possession, and whether or not the victim had a weapon in his possession.

The jury convicted defendant on both charges.

The issues are whether: (I) there was sufficient evidence that defendant did not shoot the victim in self-defense to reach a jury; (II) admission of Nordhoff's testimony regarding the information he found on the website was plain error; (III) there was a fatal variance between the pleading and the proof on the charge of felonious possession of a weapon of mass destruction; and (IV) the trial court's instruction on self-defense constituted plain error.

I.

**[1]** Defendant first argues there was insufficient evidence upon which to convict him of voluntary manslaughter because the State failed to present sufficient evidence that the shooting was not committed in self-defense.

"Voluntary manslaughter is defined as 'the unlawful killing of a human being without malice, express or implied, and without premeditation and deliberation.'" *State v. McNeil*, 350 N.C. 657, 690, 518 S.E.2d 486, 506 (1999) (quoting *State v. Rinck*, 303 N.C. 551, 565, 280 S.E.2d 912, 923 (1981)). "Generally, voluntary manslaughter occurs when one kills intentionally but does so in the heat of passion suddenly aroused by adequate provocation or in the exercise of self-defense where excessive force is used or [the] defendant is the aggressor." *State v. Jackson*, 145 N.C. App. 86, 90, 550 S.E.2d 225, 229 (2001). In this case, defendant contends he did not commit voluntary manslaughter because he was acting in self-defense.

Pursuant to the law of perfect self-defense, a killing is excused altogether if, at the time of the killing, four elements existed:

"(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and

(2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, *i.e.*, he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, *i.e.*, did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm."

*State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981) (citation omitted). When the evidence in a homicide prosecution raises the issue of self-defense, the State bears the burden of proving the defendant did not act in self-defense. *State v. Gilreath*, 118 N.C. App. 200, 208, 454 S.E.2d 871, 876 (1995). The test on a motion to dismiss is therefore whether the State has presented substantial evidence which, when taken in the light most favorable to the State, would be sufficient to convince a reasonable juror that the defendant did not act in self-defense. *Id.*

In this case, the State presented evidence that the victim was unarmed and his body was found in his own backyard fourteen and a half feet from the fence separating his property from defendant's residence. Other evidence revealed defendant left the initial confrontation with the victim in order to retrieve his shotgun. *See State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (2000) (on a motion to dismiss, defendant's evidence should be ignored unless it is favorable to the State or does not conflict with the State's evidence). He then returned with his shotgun, ultimately using it to kill the victim. This is evidence that defendant was not threatened with death or great bodily harm and that defendant exerted excessive force against the victim. Furthermore, as defendant left the scene and returned with a shotgun this is evidence that he entered into the confrontation willingly. This is sufficient evidence to support a voluntary manslaughter conviction. Defendant's evidence to the contrary does not negate the

State's evidence, but is instead evidence to be considered by the jury in reaching its verdict. *See In re Wilson*, 153 N.C. App. 196, 198, 568 S.E.2d 862, 863 (2002).

## II.

[2] Defendant next contends it was plain error to admit testimony from Nordhoff that, based on information from the website, the shotgun used by defendant was manufactured by Jay Stevens Arms sometime after 1905. Defendant contends this was inadmissible hearsay. This testimony was, however, elicited by defendant's cross-examination of Nordhoff and defendant did not object or move to strike this testimony. It is apparent that defendant invited this testimony in an attempt to discredit Nordhoff's expert opinion by undermining his credibility through a showing that the only source he relied on as the basis of his opinion was an unverifiable website.

Even if this testimony was admitted as inadmissible hearsay evidence, and not as evidence impeaching the credibility of the witness, it would have to rise to the level of plain error to warrant a reversal, and thus the burden is on defendant to establish that without the error a different result probably would have been reached. *See State v. Bellamy*, 159 N.C. App. 143, 147, 582 S.E.2d 663, 667, *cert. denied*, 357 N.C. 579, 589 S.E.2d 130 (2003). Defendant contends this testimony rises to the level of plain error because it is the only evidence that the shotgun was not an antique and thereby exempted from the possession of a weapon of mass destruction statute.

N.C. Gen. Stat. § 14-288.8 defines a weapon of mass destruction as including, "any shotgun with a barrel . . . less than 18 inches in length or an overall length of less than 26 inches." N.C. Gen. Stat. § 14-288.8(c)(3) (2003). The statute exempts, however, any device which is defined by the United States Secretary of the Treasury as an "antique." N.C. Gen. Stat. § 14-288.8(c). Federal law defines an antique firearm as one that was manufactured in or before 1898. 18 U.S.C. § 921(16)(A) (2003). Defendant asserts that as Nordhoff's testimony on recall was the only evidence of the age of the weapon, without this evidence the State has failed to meet its burden of proof to show the gun was not an antique.

Although the question of which party has the burden of proof on the issue of whether a weapon is an antique under N.C. Gen. Stat. § 14-288.8(c) has not previously been addressed, this Court has held

that the "inoperability" of a weapon under N.C. Gen. Stat. § 14-288(c) is an affirmative defense with the burden on a defendant to produce evidence of inoperability. *See State v. Fennell*, 95 N.C. App. 140, 145, 382 S.E.2d 231, 233-34 (1989). Our Supreme Court has, however, subsequently criticized the rationale in *Fennell* and limited its holding to "mean inoperability is a defense to the extent that the defendant can prove the pieces [of a weapon] seized were not 'designed or intended for use in converting any device' into a weapon of mass death and destruction." *State v. Jackson*, 353 N.C. 495, 499, 546 S.E.2d 570, 573 (2001). Thus, our Supreme Court only criticized *Fennell* in its inexact usage of the general term "inoperability," not in our placing the burden of proof on this issue upon a defendant. *See id.*

The case *sub judice*, unlike *Fennell*, does not require interpretation of whether the antique status of a weapon exempts it from N.C. Gen. Stat. § 14-288.8, because antique weapons, as previously noted, are explicitly exempted. Instead, this case only presents the question of which party holds the burden of proof on this issue. We elect to follow the reasoning in both *Fennell* and *Jackson* by holding that the antique status of a sawed-off shotgun is an affirmative defense under Section 14-288.8, and thus, the initial burden of proof is on a defendant to present evidence of the antique status of the shotgun. *See Fennell*, 95 N.C. App. at 145, 382 S.E.2d at 233; *see also State v. Baldwin*, 34 N.C. App. 307, 309, 237 S.E.2d 881, 882 (1977) (where defendant presented no evidence of inoperability, the State was not required to present evidence of operability).

In this case, the only evidence presented by defendant as to the age of the shotgun was that it had belonged to his father, who had received it from an eighty-three year old woman whose father had owned it. This is not evidence that the shotgun meets the technical definition of an antique under N.C. Gen. Stat. § 14-288.8 and 18 U.S.C. § 921(16)(A), but is rather circumstantial evidence that the gun is merely old. We conclude that evidence a gun is simply old, without more, is insufficient to shift the burden of proof to the State to prove the gun is not an antique. Therefore, since there was no evidence that the shotgun was an antique, the jury could not have found it to be one. Consequently, even without Nordhoff's testimony as to the date of the gun's manufacture, it is not probable that the jury would have reached a different verdict. Thus, even assuming admission of this testimony was error, it does not rise to the level of plain error.

III.

[3] Defendant next argues that there was insufficient evidence to support the charge of felonious possession of a weapon of mass destruction. Specifically, defendant contends the proof did not match the indictment. Defendant was indicted for felonious possession of a weapon of mass destruction, "to wit: a Stevens 12 gauge single-shot shotgun." Defendant contends the only evidence presented was that the shotgun was an "Eastern Arms" shotgun. Defendant, however, ignores the testimony he elicited on cross-examination that "Eastern Arms" was a brand name of Jay Stevens Arms. This is evidence the shotgun was manufactured by Jay Stevens Arms and would thus be a Stevens shotgun.

Moreover, even if there was no evidence that the shotgun was a Stevens shotgun, the test for whether there is a fatal variance in the indictment is whether " 'the act or omission [alleged] is clearly set forth so that a person of common understanding may know what is intended.' " *State v. Snyder*, 343 N.C. 61, 66, 468 S.E.2d 221, 224 (1996) (quoting *State v. Coker*, 312 N.C 432, 435, 323 S.E.2d 343, 346 (1984)). In this case, any person of common understanding would have understood that he was charged with possessing the sawed-off shotgun that he used to shoot the victim on the night alleged.

IV.

[4] Defendant finally assigns plain error to the trial court's instruction on self-defense. In addressing the reasonableness of defendant's belief that it was necessary to kill the victim in order to save himself, the trial court stated, without objection: "In making this determination you should consider the circumstances as you find them to have existed from the evidence, including . . . *whether or not the victim had a weapon in his possession, and whether or not the victim had a weapon in his possession.*" (Emphasis added.)

Defendant argues this repetition was plain error. The trial court, however, was simply reading the pattern jury instruction, *see* 1 N.C.P.I.—Crim. 206.40 (2002), and made the repetition instead of reading "the reputation, if any, of the victim for danger and violence." *Id.* Defendant did not object at trial to the instruction and does not argue that the victim's reputation was an issue the jury should have considered. As such, the trial court's misreading of the instruction was not plain error.

No error.

Judges McGEE and GEER concur.